UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 96-1460

ASTRID L. PORTELA-GONZALEZ, ET AL.,

Plaintiffs, Appellants,

v.

SECRETARY OF THE NAVY, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge] 



Before

Torruella, Chief Judge, 

Selya and Stahl, Circuit Judges. 



Alex Gonzalez, with whom Gonzalez & Vilella was on brief, 
for appellants.
Isabel Mu oz Acosta, Assistant United States Attorney, with 
whom Guillermo Gil, United States Attorney, was on brief, for 
appellees.



March 26, 1997


SELYA, Circuit Judge. In this appeal, plaintiff- SELYA, Circuit Judge. 

appellant Astrid L. Portela-Gonzalez (Portela) challenges a

summary judgment entered in favor of the Navy.1 Although our

reasoning differs in one salient respect from that employed by

the court below, we affirm the judgment. See Hachikian v. FDIC, 

96 F.3d 502, 504 (1st Cir. 1996) (explaining that an appellate

court is not committed to the trial court's rationale, but may

affirm on any alternative ground made manifest by the record). 

I. BACKGROUND I. BACKGROUND

The facts essential to our review are largely

uncontested. Portela worked for nearly three decades as a

civilian employee at the Roosevelt Roads Naval Station. From

1985 forward, she occupied the position of sales manager at the

Navy Exchange. She had an unblemished employment record and

achieved consistently high performance ratings.

On December 14, 1989, Portela placed 28 articles of

clothing on layaway at the Exchange, 25 of which were clearance

sale items (known colloquially as "red tag" items). The

anticipated purchase price of the merchandise was $484.10. When

the Exchange slashed the prices of all red tag items even more

drastically during the post-Christmas lull, Portela spied an

opportunity for increased savings, canceled her layaway

arrangement (paying a $5.00 penalty), and simultaneously
 

1Portela's husband, Juan Enrique Del Valle, and their
conjugal partnership are also plaintiffs; the Secretary of the
Navy and the Naval Resale and Services Support Office (NRSSO) are
additional defendants. For simplicity's sake, we treat the case
as involving only Portela and the Navy.

2

repurchased the articles she had removed from layaway status for

a price of $330.79. Portela contends that these machinations did

not transgress any policy, rule, or regulation of the Exchange;

the Navy contends otherwise.

II. THE AFTERMATH II. THE AFTERMATH

On April 9, 1990, L.H. Arcement, Jr., the Officer in

Charge (OIC) of the Navy Exchange, suspended Portela without pay

pending anticipated disciplinary action. On May 29, Arcement

notified Portela that she would be terminated for "applying an

unauthorized 40% price reduction to red tagged clothing items you

had placed on layaway in violation of the Exchange's layaway

policy, resulting in a loss to the Exchange of $197.32."2

Pursuant to the controlling administrative procedure, contained

in a Secretary of the Navy Instruction (SECNAVINST), the letter

informed Portela of the charges against her and outlined her

procedural rights.

Portela contested the proposed disciplinary action. On

June 22, 1990, the OIC overrode Portela's grievance and

terminated her employment as of July 3, 1990. The Navy advised

Portela of her right to appeal this decision and she proceeded to

do so. Her first appeal was heard pro forma by the OIC who, not 

surprisingly, affirmed his original determination. Her second

appeal culminated in a full evidentiary hearing, following which

 

2While simple arithmetic indicates that this figure is in
the vicinity of 40% of the original purchase price, the record
sheds no further light on its genesis. We need not probe the
point, however, because Portela does not challenge the amount.

3

Michael F. O'Brien, the Commanding Officer of the Roosevelt Roads

Naval Station, upheld her termination.

Portela pursued the appellate process to the next

level. On March 25, 1991, Rear Admiral H.D. Weatherson,

Commander of the NRSSO, headquartered at Staten Island, New York,

affirmed her termination. This decision informed Portela of her

right to take a final administrative appeal to the Deputy

Assistant Secretary of the Navy, Civilian Personnel Policy, Equal

Employment Opportunity Office, in Washington, D.C. Rather than

pursue this fourth level of administrative redress, Portela filed

suit.

After some preliminary skirmishing, not relevant here,

the district court addressed the Navy's motion for summary

judgment. The court ruled that Portela had failed to exhaust

available administrative remedies but nonetheless reached the

merits of her suit in the exercise of its perceived discretion.

See Portela Gonzalez v. Secretary of Navy, 913 F. Supp. 122, 126- 

28 (D.P.R. 1996). Portela's victory proved ephemeral, however,

as the court concluded that the Navy's actions were neither

arbitrary nor capricious. See id. at 128. This appeal ensued. 

III. DISCUSSION III. DISCUSSION

We agree with the district court that Portela

impermissibly failed to exhaust her administrative remedies. We

disagree, however, that the court had discretion, in the

circumstances of this case, to relieve her of the onus of her

omission.

4

A. The Exhaustion Doctrine. A. The Exhaustion Doctrine. 

Starkly contoured, the exhaustion doctrine holds that

"no one is entitled to judicial relief for a supposed or

threatened injury until the prescribed administrative remedy has

been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 

41, 50-51 (1938). In practice, the doctrine has softer edges

than this language implies. See Kenneth Culp Davis & Richard J. 

Pierce, Jr., II Administrative Law Treatise 15.2, at 307 (3d 

ed. 1994). Although exhaustion of administrative remedies is

absolutely required if explicitly mandated by Congress, see 

McCarthy v. Madigan, 503 U.S. 140, 144 (1992), courts have more 

latitude in dealing with exhaustion questions when Congress has

remained silent, see Darby v. Cisneros, 509 U.S. 137, 153-54 

(1993); McCarthy, 503 U.S. at 144. In such purlieus, the court 

of first instance possesses a modicum of discretion to relax the

exhaustion requirement. See Salus v. GTE Directories Serv. 

Corp., 104 F.3d 131, 138 (7th Cir. 1997). 

The Court's opinion in McCarthy is integral to an 

understanding of the parameters of this discretion. Although

recognizing that the exhaustion doctrine ordinarily "serves the

twin purposes of protecting administrative agency authority and

promoting judicial efficiency," and, thus, should customarily be

enforced, the Court identified "three broad sets of circumstances

in which the interests of the individual weigh heavily against

requiring administrative exhaustion." McCarthy, 503 U.S. at 145, 

146.

5

First, a court may consider relaxing the rule when

unreasonable or indefinite delay threatens unduly to prejudice

the subsequent bringing of a judicial action. See id. at 146-47. 

And, relatedly, if the situation is such that "a particular

plaintiff may suffer irreparable harm if unable to secure

immediate judicial consideration of his claim," exhaustion may be

excused even though "the administrative decisionmaking schedule

is otherwise reasonable and definite." Id. at 147. 

Second, McCarthy acknowledges that it sometimes may be 

inappropriate for a court to require exhaustion if a substantial

doubt exists about whether the agency is empowered to grant

meaningful redress. See id. at 147-48, 154; see also Gibson v. 

Berryhill, 411 U.S. 564, 574 n.14 (1973). An agency, for 

example, may lack authority to grant the type of relief

requested. See, e.g., McNeese v. Board of Educ., 373 U.S. 668, 

675 (1963).

Finally, McCarthy teaches that the exhaustion rule may 

be relaxed where there are clear, objectively verifiable indicia

of administrative taint. Thus, if the potential decisionmaker is

biased or can be shown to have predetermined the issue, failure

to exploit an available administrative remedy may be forgiven.

See McCarthy, 503 U.S. at 148. 

B. Application of the Doctrine. B. Application of the Doctrine. 

Congress has excluded Navy Exchange personnel from the

strictures of the Administrative Procedure Act, see 5 U.S.C.  

2105(c), and has not otherwise mandated that such employees

6

always must exhaust administrative remedies as a condition

precedent to suit. Accordingly, Portela's admitted failure to

exercise the final level of available administrative review is

not necessarily fatal to her claim; the effect of her omission

depends instead upon whether the circumstances of her case can

justify that omission.

1. The Availability of Fourth-Level Review. We start 1. The Availability of Fourth-Level Review. 

this phase of our analysis by addressing Portela's halfhearted

argument, raised for the first time on appeal, that a fourth

level of review was not in fact available to her. The argument

is bogus.

The facts are as follows. The original administrative

procedure, SECNAVINST 5300.22A, did not mention a fourth level of

review. On November 15, 1989, however, the Secretary of the Navy

promulgated SECNAVINST 5300.22B, directing subordinate commands

to implement it within 120 days. The new regulation (5300.22B)

explicitly canceled the old regulation (5300.22A). Nevertheless,

on January 24, 1990, the Director, Officer of Civilian Personnel

Management, granted an extension to the NRSSO, deferring the

effective date of SECNAVINST 5300.22B until July 15, 1990. Thus,

the notice of suspension issued to Portela on April 9, 1990, the

notice of proposed disciplinary action issued to her on May 29,

1990, and the notice of decision dated June 22, 1990, all

referenced SECNAVINST 5300.22A as the controlling regulation.

From that point forward, however, Portela clearly

understood indeed, urged that SECNAVINST 5300.22B, which

7

unarguably contains a fourth level of administrative review,

governed her case. She mentioned it in her second appeal, dated

August 12, 1990, and at the ensuing evidentiary hearing her

counsel insisted that 5300.22B, rather than 5300.22A, controlled

her case. While the hearing officer did not rule on the

question, the ultimate decisionmaker at that level (the

Commanding Officer of the Roosevelt Roads Naval Station) accepted

Portela's argument and reviewed the hearing transcript in

accordance with SECNAVINST 5300.22B. Throughout the remainder of

the administrative process, both sides proceeded under that

regulation.3

We do not aspire to add hues to a rainbow. By its

terms, SECNAVINST 5300.22B applies here. And, moreover, since

Portela consistently argued for its application during the latter

stages of the administrative process, she cannot now be heard to

complain that the agency surrendered to her exhortation.

Equitable doctrines of estoppel apply in administrative and

judicial fora, see generally Davis & Pierce, supra, 13.1 to 

13.5, and a party cannot take one position in an underlying

administrative proceeding and then disclaim it in a subsequent

suit arising out of the agency proceedings. Cf. Patriot Cinemas, 

Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) 

 

3We cite two episodes which confirm this conclusion. In her
third-level notice of appeal, Portela stated expressly that
"[t]his appeal arises under SECNAVINST 5300.22B." By like token,
in resolving that appeal adversely to Portela, the NRSSO
commandant specifically informed Portela of her right to a
fourth-level appeal under SECNAVINST 5300.22B.

8

(explaining that the doctrine of judicial estoppel "precludes a

party from asserting a position in one legal proceeding which is

contrary to a position it has already asserted in another").

2. The Futility Exception. The only question that 2. The Futility Exception. 

remains is whether Portela's failure to mount the final rung of

the administrative ladder is fatal to the court case. She argued

below that the court should excuse her omission, asseverating

that a final appeal to the Deputy Assistant Secretary of the Navy

would have been a futile gesture because it would have resulted

in an automatic affirmance of her dismissal. In theory, this is

a good argument. Consistent with the exceptions limned by the

McCarthy Court, we have recognized the inappropriateness of 

requiring exhaustion when further agency proceedings would be

futile. See, e.g., Pihl v. Massachusetts Dep't of Educ., 9 F.3d 

184, 190 (1st Cir. 1993); Christopher W. v. Portsmouth Sch. 

Comm., 877 F.2d 1089, 1095 (1st Cir. 1989); Ezratty v. 

Commonwealth of P.R., 648 F.2d 770, 774 (1st Cir. 1981). 

But the futility exception is not available for the

asking. Reliance on the exception in a given case must be

anchored in demonstrable reality. A pessimistic prediction or a

hunch that further administrative proceedings will prove

unproductive is not enough to sidetrack the exhaustion rule. See 

Christopher W., 877 F.2d at 1095-96; see also Gilbert v. City of 

Cambridge, 932 F.2d 51, 61 (1st Cir. 1991) (admonishing that "the 

mere possibility, or even the probability, that the responsible

9

agency may deny [a] permit should not be enough to trigger the

[futility exception]"). Accordingly, "[a]n essential element of

the claim of futility . . . is that all reasonable possibilities

of adequate administrative relief have been effectively

foreclosed." Tucker v. Defense Mapping Agency 

Hydrographic/Topographic Ctr., 607 F. Supp. 1232, 1243 (D.R.I. 

1985). Indeed, the Seventh Circuit has held that claimants who

seek safe harbor under the futility exception "must show that it

is certain that their claim will be denied on appeal, not merely

that they doubt an appeal will result in a different decision."

Smith v. Blue Cross & Blue Shield United, 959 F.2d 655, 659 (7th 

Cir. 1992).4

Portela cannot surmount this hurdle. The claim of

futility is merely a self-serving pronouncement in the

circumstances of this case. The evidence is uncontradicted that

the Deputy Assistant Secretary is an impartial official who has

reversed termination decisions affecting Navy Exchange personnel

in the past. Though the prognosis for Portela's unused

administrative appeal may have been poor and her expectations

modest, neither courts nor litigants are allowed to equate

pessimism with futility. See Hodges v. Callaway, 499 F.2d 417, 

424 (5th Cir. 1974). Because there is nothing in the record to

 

4For our part, we are tempted to set the benchmark slightly
below absolute certainty, cf. Gilbert, 932 F.2d at 61 ("To come 
within the exception, a sort of inevitability is required: the
prospect of refusal must be certain (or nearly so)."), but the
case at hand does not require us to choose between these two
formulations.

10

suggest that Portela's lack of success at the previous levels of

review necessarily signified that the final level of review would

be an empty gesture, her failure to exhaust an available

administrative remedy cannot be overlooked on the ground of

futility.

3. The District Court's Rationale. To this point, we 3. The District Court's Rationale. 

are in agreement with the court below. See Portela, 913 F. Supp. 

at 126-27 (declaring that alleged futility did not excuse

Portela's nonexhaustion). After finding the plaintiff's futility

argument futile, however, the district judge nonetheless elected

to relax the exhaustion requirement "[i]n the interests of

minimizing cost and delay in the judicial system and avoiding the

waste of resources." Id. at 127. The judge reasoned that a 

perceived waste of resources, in and of itself, can justify

excusing nonexhaustion of administrative remedies. We think

not.5

Were we to adopt the lower court's reasoning, the

resulting exception would swallow the exhaustion rule in a single

gulp. Once an aggrieved party has brought suit, forcing her to

retreat to any unused administrative appeal potentially wastes 

 

5To be sure, we stated in Ezratty that "[s]ometimes to 
require exhaustion will not only waste resources but also work
severe harm upon a litigant." 648 F.2d at 774. Taken in
context, this statement is entirely compatible with the "undue
prejudice/irreparable harm" consideration outlined by the
McCarthy Court in its discussion of the first potential exception 
to the exhaustion rule. 503 U.S. at 146-47. In the case at bar,
there is no hint that taking an appeal to the Deputy Assistant
Secretary would have caused Portela irreparable harm or otherwise
seriously prejudiced her rights.

11

resources. The Supreme Court has disavowed such a resupinate

approach. In McKart v. United States, 395 U.S. 185, 193 (1969), 

the Court explained that a "primary purpose" of the exhaustion

doctrine is "the avoidance of premature interruption of the

administrative process." Consequently, it is generally

inefficient to permit a party to seek judicial recourse without

first exhausting her administrative remedies. See id. at 194. 

Following this train of thought, the Court has concluded that, by

and large, concerns regarding efficiency militate in favor of,

rather than against, strict application of the exhaustion

doctrine. See McCarthy, 503 U.S. at 145; McKart, 395 U.S. at 

195; see also Ezratty, 648 F.2d at 774 (acknowledging that the 

exhaustion doctrine "serves interests of accuracy, efficiency,

agency autonomy and judicial economy").

This view is steeped in real-world wisdom. Insisting

on exhaustion forces parties to take administrative proceedings

seriously, allows administrative agencies an opportunity to

correct their own errors, and potentially avoids the need for

judicial involvement altogether. Furthermore, disregarding

available administrative processes thrusts parties prematurely

into overcrowded courts and weakens an agency's effectiveness by

encouraging end-runs around it. See McCarthy, 503 U.S. at 145; 

McKart, 395 U.S. at 195. 

4. The Bottom Line. To sum up, the futility exception 4. The Bottom Line. 

is unavailable to Portela and the district court's professed

reason for excusing her failure to exhaust administrative

12

remedies neither passes muster on its own terms nor falls within

any of the hallmark McCarthy exceptions.6 Those conclusions 

dictate the result we must reach. The plaintiff left an

available administrative remedy untapped and the record in this

case, howsoever construed, reveals no sufficiently excusatory

circumstances to warrant spurning that remedy.

First, there is no indication that full exhaustion

would have caused undue prejudice, irreparable harm, or unusual

hardship of any sort. Although Portela had already pursued a

fairly lengthy administrative process, it had moved celeritously

the pavane began when the OIC terminated Portela's employment

as of July 3, 1990, and ended when the NRSSO, in the person of

Rear Admiral Weatherson, denied her penultimate administrative

appeal on March 25, 1991 and the Deputy Assistant Secretary

would have been required to respond to her final appeal "within

60 calendar days of receipt of the official record." SECNAVINST

5300.22B Ch.V (9)(d)(3). Second, the agency (here, the Navy) was

fully capable of granting all the relief that Portela originally

sought, namely, reinstatement, reassignment, and quashing the

charges against her. Third, there is no meaningful indication of

any institutional bias. Fourth, the plaintiff has not identified

any other special circumstance warranting relaxation of the
 

6We do not suggest that the three exceptions to the
exhaustion rule delineated by the McCarthy Court comprise an 
exclusive compendium. But to the extent that other exceptions
appropriately may lie, they must be on a par with the exceptions
described by the Court. As explained in the text, the record
here contains nothing which suggests a plausible basis for a
further exception.

13

exhaustion rule, and our careful perlustration of the record

reveals none. It follows that the district court should have

dismissed the complaint for failure of the plaintiff to exhaust

available administrative remedies.

IV. CONCLUSION IV. CONCLUSION

It may seem hypertechnical to some that a person who

believes herself aggrieved by agency action must jump through a

series of hoops before she can seek out a judicial forum. But

long-recognized concerns regarding agency autonomy and judicial

efficiency weigh heavily in favor of requiring complete

exhaustion of administrative remedies. When all is said and

done, our system of justice depends on litigants' adherence to

well-defined rules. Where, as here, a party decides unilaterally

to forsake those rules, she does so at her peril.

We need go no further. The short of it is that Portela

lacked a legally sufficient reason for leaping prematurely to a

judicial venue. Thus, the district court should have dismissed

her complaint for failure to exhaust available administrative

remedies. In the end, however, the district court's error is of

no moment; though the court entered judgment in favor of the Navy

on an inappropriate ground, the Navy is nonetheless entitled to

judgment.

Affirmed. Affirmed. 

14