**Mary LUNSFORD**

v.

**The FIREMAN'S FUND INSURANCE CO.**

Civ. A. No. 85–362.

United States District Court,
E.D. Louisiana.

March 13, 1986.

Patricia N. Jackson, Robert T. Garrity, Jr., Harahan, La., for plaintiff.

Phelps, Dunbar, Marks, Claverie & Sims, Antonio J. Rodriguez, Sean F. Murphy, New Orleans, La., for Fireman's Fund Ins. Co. & Joseph E. Dorignac, Jr.

Courtenay, Forstall, Grace & Hebert, Terrence C. Forstall, New Orleans, La., for Richard Bertram & Co., Inc.

Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, Robert E. Winn, Lisa J. Avery-Peck, New Orleans, La., for Whittaker Corp., Bertram Yacht Division.

## MEMORANDUM OPINION

ARCENEAUX, District Judge.

Plaintiff and defendant filed cross-motions for summary judgment to determine whether plaintiff is a seaman under the Jones Act, 46 U.S.C. § 688.[1] After oral argument on February 26, 1986, the Court granted plaintiff's motion for the following reasons.

The material facts are undisputed. Joseph Dorignac, Jr. (Dorignac) hired plaintiff Mary Lunsford (Lunsford) as a "maid-type girl" to clean the interior of his new pleasure yacht, The Cangirod II, three days a week, eight hours a day. The vessel lay at dock in a marina in New Orleans at all times while not at sea. Dorignac entertained friends and associates on the yacht while it was at the dock. Plaintiff performed her assigned work while the vessel was docked. Lunsford had no other employment with Dorignac, nor was she otherwise employed. Her duties while on board entailed cleaning the vessel's kitchen and bath, vacuuming, dusting, washing floors and windows, changing bed linens, washing laundry and provisioning the yacht. Plaintiff worked on shore twice: she cut a narrow strip of grass in front of the boathouse, and in preparation for the yacht's arrival in New Orleans, she cleaned the boathouse and the captain's apartment above it, but this was not a continuing duty. Lunsford did not eat or sleep on the yacht.

According to the deposition testimony of Captain Marler who kept the vessel logs, the yacht arrived in New Orleans on March 8, 1984, about 5:00 P.M. The yacht made two trips during Lunsford's employment: a two day trip on March 9–10, 1984, and a two hour trip on March 14, 1984. Lunsford did not travel with the yacht either time.

Lunsford stated in her deposition that the yacht arrived in New Orleans on February 20, 1984, and she cleaned the yacht about ten times before her slip and fall on March 19, 1984. However, because the vessel logs show the yacht arrived on March 8, 1984, it is probable Lunsford worked five or six days on the yacht.

■ The resolution of plaintiff's seaman status begins with the *Robison* test, as recently approved and explained by the Fifth Circuit *en banc* in *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067 (5th Cir. 1986): 1) the plaintiff must be assigned permanently to a vessel or perform a substantial part of plaintiff's work on a vessel; and 2) plaintiff must contribute to the function or mission of the vessel, or to the

---

1. "[A]lthough seaman status is an issue of fact, when there are no facts in dispute, a court may rule on the issue as a matter of law...." *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 383 (5th Cir.1985) quoting *Abshire v. Seacoast Products, Inc.,* 668 F.2d 832, 835 (5th Cir.1982).

operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959). Defendant has stipulated that the yacht is a vessel and that it was in navigation for purposes of the Jones Act while docked and afloat in the marina.[2]

■ As the Fifth Circuit observed in *Barrett*, very few cases have considered the second part of the *Robison* test because "[t]his aspect of the test is by its nature easily ascertained—for example, Robison's duties aboard the seagoing drilling platform clearly contributed to the function that it was designed to serve—drilling for oil." 781 F.2d at 1073. Similarly, this Court has no difficulty finding Lunsford's duties of cleaning and provisioning The Cangirod II surely contributed to its function as a pleasure boat, while at sea and at the dock. *Spellman v. American Barge*, 176 F.2d 716 (3rd Cir.1949) (a maid on a vessel at sea is a seaman).

■ Defendant's argument that plaintiff did not contribute to the vessel's mission because she never went to sea on the yacht ignores *Robison* which includes workers who contribute to the vessel's mission "during anchorage." Defendant further attempts to persuade the Court that "contribute to the mission of the vessel" is just another way of saying the plaintiff must "aid in the navigation" of the vessel, and therefore relies heavily on pre-*Robison* Fifth Circuit authority and Third and Ninth Circuit authority. This argument has no merit. The "aid to navigation" standard has not been the law in this Circuit since 1959 when the Fifth Circuit discarded it in *Robison*. Recently, in *Barrett*, the Fifth Circuit explicitly declined to accept the sug-

gestion by amici that the "aid to navigation" requirement be reintroduced.

■ The "permanency" aspect of the *Robison* test is more troubling. Whether a part time employee working on a single vessel is "assigned permanently" or "performs a substantial part of his work" on a vessel appears to be a question of first impression. Cases considering "permanent assignment" have done so in the context of an employee assigned to more than one vessel. *Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307 (5th Cir. 1984); *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir.1983). *Bertrand* described the permanency requirement as "more than a transitory connection with a vessel ... evincing a vessel relationship substantial in point and time and not merely spasmodic." *Id.* at 247. Reading the words "assigned permanently" literally, the Court concludes Lunsford was permanently assigned to Dorignac's yacht. Dorignac hired her to work three days a week on The Cangirod II. She did not work on any other vessel. Lunsford's assignment was as permanent as that of any crew member whose services are only intermittently required.

■ Further, applying the disjunctive clause of the first *Robison* test, it is also undoubtedly true that the plaintiff performed a substantial part of her work on a vessel; indeed, *all* of her work was so performed, except for the two isolated instances referred to above.

\* \* \* \* \* \*

The Congress which passed the Jones Act would doubtless be amazed to learn that Mary Lunsford, a shore-based part time cleaning lady, has now become a "seaperson," with all the rights and privi-

2. While *Robison* is undoubtedly the fountainhead of the law according seaman status to maritime workers, subsequent cases have sometimes regarded the status test as comprised of three criteria:

"(1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he performs must contribute to the function of the vessel, the accomplishment of its mission or its opera-

tion and welfare in terms of its maintenance during its movement or during anchorage for its future trips." *Barrios v. Engine & Gas Compressor Services, Inc.*, 669 F.2d 350, 352 (5th Cir.1982), citing *Watkins v. Pentzien, Inc.*, 660 F.2d 604, 606 (5th Cir.1981).

The second part of the three-part test is, of course, satisfied by the stipulation. Hence, this Court, as did the *Barrett* court, applies a two-part *Robison* test.

leges attendant to that status. Indeed, the Court's first impression of this issue produced a similar response. But as indicated above, the seaman status test in this circuit, only recently reaffirmed in *Barrett*, leaves no alternative to the result this Court has reached.

Would that it did, for this Court's inclination is towards a contrary conclusion. Indeed, vesting a shore-based, part time employee who thrice-weekly only cleaned and provisioned a pleasure boat while moored in its yacht-harbor slip, with the peculiar rights and special remedies fashioned to protect the unique interests of those who face the perils of the sea, expands the meaning of the term "seaman" to new limits.

Should this matter be appealed, perhaps the Fifth Circuit Court of Appeals will find this Court's interpretation of its sailing orders flawed, and correct the course this voyage has taken.

Until that time, the plaintiff's motion for summary judgment as to seaman status is GRANTED and the defendant's motion is DENIED. The defendant's motion to strike plaintiff's jury demand is likewise DENIED.