**Kenneth E. LAMONTAGNE, Plaintiff,**

v.

**Robert F. CRAIG, Defendant.**

**No. C–83–2002–JPV.**

United States District Court,
N.D. California.

April 25, 1986.

Albert M. Kun, San Francisco, Cal., for plaintiff.

John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF ADMIRALTY JURISDICTION

VUKASIN, District Judge:

### I. INTRODUCTION

This action arises from events transpiring aboard the SS MOBILE, a merchant vessel operating between the Philippine Islands and the Republic of China in the South China Sea. Plaintiff Kenneth Lamontagne was at all relevant times the Chief Mate of the craft, defendant Craig its Chief Engineer. The MOBILE was owned by SeaLand Corporation, a Delaware entity with offices, among other places, in Hong Kong. SeaLand's Far East Regional Manager, one G.H. Whittaker, was stationed at the Hong Kong Office.

As Chief Engineer, Craig was responsible for all fuel oil transfer operations. Craig Decl., Ex. "A" [SeaLand Master's Policy Manual, ¶¶ 2, 6.] Deck officers, such as the Chief Mate, had no engine department authority, hence no responsibility for such operations. Nonetheless, on several occasions prior to November 3, 1982, Lamontagne did in fact order certain fuel oil transfers, once directing that a

partially-depleted deck diesel fuel container be put ashore in Kao, on another voyage deciding not to dump the remainder of the deck tank into the Vessel's "permanent" diesel tank. Neither decision was made in consultation with the Chief Engineer: evidently Lamontagne merely decided on his own to initiate these actions.

Viewing this conduct as a usurpation of his duties and responsibilities, Craig sent an inter-office letter to the aforesaid Whittaker, complaining of Lamontagne's behavior and asking that he be privately and discreetly remonstrated as to the distinction between the respective duties of the Chief Engineer and Mate. This letter, written on board the SS MOBILE on November 3, 1982, was received and read by Whittaker in Hong Kong some time later. It is this correspondence which forms the basis of the present defamation action.

Lamontagne claims this letter is libelous. He does not dispute the contents of the communication, rather its tone,[1] and he argues that the acts referred to therein do not, in fact, constitute "usurpation" of the Chief Engineer's duties. As "special damages," plaintiff proffers his belief that, when the Master of the MOBILE was subsequently removed (apparently for dipsomania, see Plaintiff's Statement of Material Facts Not In Dispute, at 1:24–27), Lamontagne was passed over for the job despite his claimed possession of the necessary qualifications.

The Complaint was filed on April 19, 1983, purportedly under the admiralty jurisdiction of this Court. Defendant now having moved for dismissal of the Complaint under the theory that this is not properly a suit in admiralty, the Court hereby grants the motion for the reasons set forth below.[2]

---

1. The Court is constrained to note that, having reviewed the subject letter, it appears to be a document of singular inoffensiveness, characterized chiefly by Craig's insistence that the matter be handled with tact and discretion.

2. Said motion was calendared for hearing on February 27, 1986. Owing to a calendaring

## II. DISCUSSION

The jurisdictional basis for the Complaint is 28 U.S.C. § 1333(1), which provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases other remedies to which they are otherwise entitled.

In the area of maritime torts, this venerable statute has engendered considerable litigation on the question of when an action falls within the ambit of the District Court's admiralty jurisdiction. See generally 2 Benedict, Admiralty, § 2 (7th Ed. Rev'd 1985).

The place where the tort was committed, generally speaking, is determinative of admiralty jurisdiction. Such jurisdiction is ordinarily limited to torts that occur on navigable waters, as distinguished from those occurring on land. See generally 2 Am.Jur.2d, "Admiralty," § 81, at p. 765. This, the so-called "locality test," was for many years the sole basis in determining whether an action could be brought "in admiralty." See Benedict, supra, § 2, at 1–6 and n. 7. "In regard to torts ... the jurisdiction of the admiralty is exclusively dependent upon the locality of the act." Thomas v. Lane, 23 F.Cas. 957 (C.C.D.Me. 1813), cited in Smith v. Pan Air Corp., 684 F.2d 1102, 1105 (5th Cir.1982).

Because admiralty jurisdiction has eluded precise statutory delineation, "and difficulties attend every attempt to define its exact limits," 2 Am.Jur.2d, supra, § 15, at p. 729, the locality test predictably gave rise to myriad problems of its own. See Benedict, supra, § 2. In 1972, the Supreme Court addressed these difficulties, concluding in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct.

---

confusion, it was the belief of plaintiff's counsel that argument was in fact scheduled for the following day. Defendant having appeared through counsel on February 27, the Court declined to hear oral argument and ruled from the bench that day.

493, 34 L.Ed.2d 454 (1972), that "the mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters" is not in itself sufficient; to create a maritime tort it is also required that "the wrong bear a significant relationship to traditional maritime activity." *Id.,* 409 U.S. at 268, 93 S.Ct. at 504; *cf. Nelson v. United States,* 639 F.2d 469, 472 (9th Cir.1980). This has become known as the "locality plus" test.

In the present instance, the second prong of the "locality plus" test—whether the wrong bears a significant relationship to traditional maritime activity—is clearly met. It is undisputed that the MOBILE was so engaged at the time of the alleged libel. It is the primary point, the "locality" of the tort, which is more significant, and it is upon this analysis that defendant grounds his motion to dismiss.

Craig submits that this case cannot possibly fall within the Court's admiralty jurisdiction because the "tort" did not occur on navigable waters, but was in fact committed, if at all, only upon publication of the November 3, 1982 letter—an event which occurred only upon its reception and consideration by G.H. Whittaker, in Hong Kong, on land. In support of this position, defendant cites to the Court a pair of cases, *Clinton v. Joshua Hendy Corp.,* 285 F.2d 199 (9th Cir.1960) and *Clinton v. Int'l Org. of Masters, Mates & Pilots,* 254 F.2d 370 (9th Cir.1958).

The *Clinton* dyad is distinguishable from the facts here, but the rationale may to a certain degree be adopted by this Court in deciding the merits of defendant's motion to dismiss. In *Joshua Hendy,* an allegedly libelous letter about Clinton, a mariner, was written on board a vessel and published thereon to members of Clinton's union; this purportedly resulted in his dismissal from his union. While admittedly close to the situation here, *Joshua Hendy* is not on all fours, as the publication there took place aboard the ship. The Ninth Circuit nonetheless took the view that the tort, if any, was consummated on shore (with Clinton's dismissal) and held that admiralty jurisdiction did not exist. *Id.,* at 200. *Mas-*

*ters, Mates & Pilots* is more remote from the facts here. That matter found the litigious Clinton complaining of alleged violations of union by-laws, including failure to provide him a proper allocation of available jobs. The Court found that the complaint involved "a labor contract, entered into upon the land, to be performed upon the land, and breached, if at all, upon the land." Stating that "[any] relationship to vessels and the sea is at best remote and indirect," the Ninth Circuit held that Clinton had failed to establish a basis for federal admiralty jurisdiction. *Id.,* at 372.

There appears to be no authority involving the specific question presented here. An extension of the rule in *Joshua Hendy* to these facts would not, however, be inapposite. The difference between a libel, published abroad a ship and resulting in on-shore injuries (*Joshua Hendy*), and a libel, written on board but not published until it reaches its land destination, with injuries of debatable locus (the case here), is merely one of degree. To pursue this reasoning would comport not only with the "locality" requirement of the "locality plus" test, *see Parker v. South La. Contr., Inc.,* 537 F.2d 113, 115 (5th Cir.1976); *Roberts v. United States,* 498 F.2d 520, 523 (9th Cir.1974); *Earles v. Union Barge Line Corp.,* 486 F.2d 1097, 1100 (3rd Cir. 1973); *Chapman v. City of Grosse Pointe Farms,* 385 F.2d 962, 964 (6th Cir.1967), but would be consistent with the dictates of logic and common sense as well. As the Court stated in *Chapman, supra,* "the governing principle ... is that reference should properly be made to the locality where 'the *substance and consummation*' of the occurrence which gave rise to the cause of action took place...." *Id.,* at 964 (emphasis added). In a defamation action, the place of publication—the last event necessary to render the tortfeasor liable—is, for venue purposes, the place of the wrong. *St. Clair v. Righter,* 250 F.Supp. 148, 150 (W.D.Va.1966); *see also Jaffe v. Dolan,* 264 F.Supp. 845, 848 (E.D.N.Y.1967). The Court can discern no reason why a similar rule should not be applicable to jurisdictional questions, venue being but a subset of

jurisdiction overall. Since "publication," in libel law, connotes the communication of defamatory material to a third person, *Black's Law Dictionary*, at 1105 (5th Ed. 1979), it is self-evident that the "substance and consummation" of the tort occurs when and where the third person receives, reads, and comprehends the libelous matter. In this case, therefore, it is clear that the place of publication was not aboard the SS MOBILE, regardless of the fact that the interoffice communication of November 3, 1982, was indicted there, but in Hong Kong, where the document came into G.H. Whittaker's hands. Accordingly, the "tort" alleged here took place, if at all, at SeaLand's Hong Kong offices; it thus follows that this is not properly a case of admiralty jurisdiction. Defendant's motion to dismiss is therefore meritorious.[3]

**3.** Defendant Craig has moved in the alternative for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In view of the ruling on the motion to dismiss, this alternate motion will be addressed only briefly.

Defendant raises two key points. First, he states, there is no genuine issue of material fact on the question of whether or not plaintiff did indeed usurp his duties with reference to the fuel oil transfer operations; the truth of the allegations in the November 3, 1982, letter, therefore, constitutes a complete defense. Second, Craig argues that plaintiff has failed to demonstrate any special damages arising from the purported libel, since his letter did not affect the company's failure to promote Lamontagne to the position of Master.

Defendant's first argument is well taken. As noted earlier, *see* p. 706 *supra*, the Master's Policy Manual of the SeaLand corporation clearly states that the engineering department, headed by the Chief Engineer, is responsible for fuel transfers. Thus, for example, § 2 states that "[a]n inspection is to be made by the Senior Deck Officer in charge *and by the Chief Engineer, together,* before commencing [fuel] bunker transfer." Similarly, ¶ 6 dictates that "... the Chief Engineer is in charge and responsible for the physical taking on of bunker fuels and is *required* to be present during this operation." [Emphasis added ¶ 2; emphasis in original ¶ 6.] Plaintiff's response is an unpersuasive argument that, although responsible for one of the incidents charged in the November 3rd letter, he had consulted with the engineering department's second-in-command, one Kuhn, prior to issuing the order. Since this clearly reflects an abridgement, not to say violation, of the plain

### III. ORDER

The Court finding that publication of defendant Robert Craig's letter of November 3, 1982, occurred in Hong Kong, and that the tort complained of, if any, arose therefore on land, the Court further finds that this is not a case within its admiralty jurisdiction under 28 U.S.C. § 1333(1). Good cause appearing, then

IT IS HEREBY ORDERED that defendant's motion to dismiss the Complaint for lack of admiralty jurisdiction is GRANTED in full.

terms of the Manual, plaintiff's theory appears to be that his acts constituted some kind of "justifiable arrogation" of Craig's duties as Chief Engineer. Little comment is due this pertinacious bit of fiction.

Defendant's second argument also appears compelling. When the bibulous Master of the MOBILE was relieved of his duties in December, 1982, the decision to remove him was made by Robert Fall, SeaLand's Vice President for Vessel Operations. Droeger Decl., Ex. [Garner Dep. at 10:11–15]. Fall has testified that, at the time the former Master was replaced, he had not even seen the Craig letter. Droeger Decl., Ex. [Fall Dep., at 45:21–25 through 46:2]. Indeed, plaintiff himself concedes that the letter had nothing to do with Fall's decision to pass over Lamontagne, *see* Plaintiff's Statement of Material Facts Not In Dispute, ¶ 8. Plaintiff's subsequent failure to attain the Master's post is less easily accounted for, but appears to have been based on a number of tepid performance evaluations he has received, most of them antedating the events at issue in this lawsuit. Evidently, the general perception of Kenneth E. Lamontagne at SeaLand was that of a capable enough deck officer, but also something of a hotspur, with a disposition to spontaneously volunteer rather brusque pronouncements on any topic he chose, including the conduct of superior officers. This temperment, the Court infers, suggested to SeaLand management that plaintiff was an inappropriate candidate for promotion to a vessel command position.

Thus, although no ruling under F.R.Civ.Proc 56 is therefore required, defendant's alternate motion appears to be meritorious, and could easily stand as a separate ground upon which Craig might prevail.