**Susan WIORA, Plaintiff,**

v.

**HARRAH'S ILLINOIS CORPORA-TION, d/b/a Harrah's Joliet Casino, a Nevada Corporation, Defendant.**

**No. 98 C 4720.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 1999.

Joseph John Cecala, McCarthy, Duffy, Neidhart & Snakard, Martin A. Smith, Smith & Alberts, Ltd., Chicago, IL, for plaintiff.

Glenn C. Ronaldson, Ronaldson and Kuchler, LLC, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Susan Wiora ("Wiora") filed a three count complaint in federal court against her former employer Defendant Harrah's Illinois Corporation ("Harrah's"). In Count I, Wiora alleges that Harrah's invaded her right to privacy. In Count II, she sets forth a claim for intentional infliction of emotional distress, and in Count III, she presents a Title VII sexual discrimination claim under the Civil Rights Act, 42 U.S.C. § 2000e–3. Defendant now asks the court to grant partial summary judgment in its favor and dismiss Counts I and II. For reasons set forth below, this court grants Defendant's motion.

### Background

Plaintiff Susan Wiora, an Illinois resident, worked as a waitress on Defendant Harrah's Joliet Casino. (Def.'s 12(M) Stmt. ¶ 2.) Harrah's Entertainment, Inc. is a holding company of Harrah's Illinois Corporation. Incorporated in Nevada, the Harrah's Illinois Corporation has its principal place of business in Illinois, the only place it is licensed to operate its casino-style gambling boat, the M/V Northern Star. (Def.'s 12(M) Stmt. ¶ 10–11.)

On December 15, 1996, a customer of Harrah's accidentally spilled hot coffee on Wiora's chest. (Compl. ¶ 3.) Immediately following the accident, Wiora received medical care from a paramedic, also an employee of Harrah's, in the first aid room on Harrah's Joliet Casino boat. (Compl. ¶ 4.) Wiora alleges that when she asked the paramedic if the surveillance cameras were filming, he assured her that they were off and instructed her to disrobe and apply certain medication to her chest. (Compl. ¶¶ 5–7.) After Wiora applied the medication, the paramedic instructed her

to lay down in the first aid room after applying the aforementioned medication. (Compl.¶ 8.) Before being transported to the hospital, an agent or servant of Harrah's gave Wiora a sweatshirt to wear. (Def.'s 12(M) Stmt. ¶ 4.)

Wiora claims that on or about February 1, 1998, she discovered that on the date of her accident, Harrah's did indeed film her as she was applying medication to her chest. (Compl.¶¶ 12–14.) Defendant admits that there does exist a videotape that portrays Wiora applying medication to her chest. (Def.'s 12(M) Stmt. ¶ 5.) Wiora asserts that at least four agents and servants of Harrah's were present in the surveillance room at the time of the taping and saw the video tape from the cameras and/or photographs. (Compl.¶ 17.) Wiora further contends that agents or servants of Harrah's showed the videotape and/or photographs to third persons. (Compl.¶ 16.)

On July 30, 1998, Wiora filed a two count complaint against Defendant Harrah's claiming invasion of privacy and intentional infliction of emotional distress. She brought this original complaint on the basis of diversity jurisdiction under 28 U.S.C. § 1332. About a month later, Wiora amended her complaint to include a third count, a Title VII sexual harassment claim. Rather than filing an amended complaint, Wiora filed an amendment to the complaint, only adding Count III, the Title VII claim. In her amendment, Wiora states the court has federal question jurisdiction under 28 U.S.C. § 1331. Defendants now ask the court to grant partial summary judgment in its favor for Counts I and II.

### Analysis

Defendant moves the court to enter partial summary judgment on its behalf under Rule 56 of the Federal Rules of Civil Procedure. The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). The court will not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox,* 78 F.3d 322, 325 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton,* 77 F.3d at 171; *Sullivan,* 78 F.3d at 325.

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights,* 48 F.3d 234, 237 (7th Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Then the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 234 (7th Cir. 1995), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

These burdens are reflected in Rule 12 of the Local General Rules for the Northern District of Illinois. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994). Under Rule 12(M), the moving party must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. Under Rule 12(N), the nonmoving party must submit a response to each such paragraph, including (in the case of disagreement) specific references to the factual record.[1] If the nonmoving party fails to disagree

---

1. Rule 12(N) further instructs the nonmoving party to submit a statement of any additional facts requiring denial of summary judgment, in the form of short numbered paragraphs supported by specific references to the factual record. In turn, Rule 12(M) instructs the moving party to submit a concise reply to any such additional facts, including (in the case of disagreement) specific references to the factual record.

with a fact in the moving party's 12(M) statement, the court will deem that fact admitted. *See* Local Rule 12(N). Similarly, if the nonmoving party disagrees with a fact in the moving party's statement, but fails to support its disagreement with a specific reference to the factual record, the court may deem that fact admitted as well. Fed.R.Civ.P. 56(e); *Flaherty v. Gas Research Institute,* 31 F.3d 451, 453 (7th Cir.1994).

The court reminds the parties of the necessity and importance of complying with the local rules pertaining to motions for summary judgment. The Seventh Circuit has made clear " 'the exacting obligation [local] rules impose on a party contesting summary judgment.' " *Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995) (citations omitted). Local rules 12(M) and 12(N) are designed to "inform the court of the evidence and arguments in an organized way—thus facilitating its judgment of the necessity for trial." *Id.* Local Rules 12(M) and 12(N) clearly and specifically put the moving and non-moving parties on notice as to the required material each party must present to the court. Here, plaintiff filed neither a 12(M) response, nor a 12(N) statement. While the court must then deem facts contained in defendant's 12(M) statement admitted, it is not relieved of its obligation to determine whether there is a genuine issue of material fact. *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1116 (7th Cir.1994).

Harrah's argues that since Wiora can be considered a seaman by law, the Jones Act is her sole means to recover for personal injuries sustained while working on the casino boat. Harrah's further contends that under the Jones Act, employees may not recover for purely emotional injuries such as those resulting from invasion of privacy and intentional infliction of emotional distress. Since Harrah's maintains that Wiora has no remedy for her claims under the Jones Act, Harrah's asks this court to grant summary judgment on Counts I and II.

In the alternative, Harrah's argues that even if the Jones Act does not apply, the court lacks jurisdiction over Counts I and II. Defendant claims that the parties are not diverse and therefore, the court does not have diversity jurisdiction. Additionally, Harrah's urges the court not to exercise supplemental jurisdiction by virtue of Title VII. In response, Wiora claims that the Jones Act does not apply, given the facts of this case. In addition, Wiora contends that even if the Jones Act applies in this case, and that the court may not exercise admiralty jurisdiction, either under general admiralty law or the Jones Act. Furthermore, she argues, Title VII provides a means for the court to exercise supplemental jurisdiction over Counts I and II.

Therefore before the court can make its decision, it must resolve three questions: (1) does the Jones Act apply in this case, in other words, can Wiora be considered a seaman under the Jones Act and may the court exercise admiralty jurisdiction over this case; (2) if she is a seaman, does the Jones Act preclude her from bringing tort claims designed to compensate for emotional injury; and (3) if these claims are not precluded by the Jones Act, does the court have an independent basis upon which to exercise jurisdiction?

## I. *Applicability of the Jones Act*

### A. Is Wiora a seaman under the Jones Act?

A review of the case law suggests that Wiora does satisfy the criteria set out to determine seaman status under the Jones Act. The Jones Act sets forth a scheme of recovery for personal injury incurred by seamen while working on a vessel in navigable waters. 46 U.S.C.App. § 688. The Jones Act provides, in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or

extending the common law right or remedy in cases of personal injury to railway employees shall apply.

■ A central question is whether Wiora was a seaman. To be a seaman, the employee: (1) must have duties which contribute to the function of the vessel or to accomplishment of its mission, and (2) must have a connection to the vessel in navigation or to an identifiable group of such vessels that is substantial in terms of both duration and its nature. *See Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). In *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), the United States Supreme Court held that an employee on board a vessel in navigation need not aid in navigation of the vessel in order to qualify as a seaman under the Jones Act. Rather, the Court emphasized that the term "seaman" should be defined in terms of an employee's connection to the vessel in navigation, and a necessary element of this connection is that the employee's duties contribute to the function of the vessel or the accomplishment of its mission. *Wilander*, 498 U.S. at 337–38, 111 S.Ct. 807.

■ "The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Wilander*, 498 U.S. at 356, 111 S.Ct. 807. While the court found no case in which a waitress was deemed a seaman, other courts have conferred seaman status upon individuals engaged in "non-traditional" maritime activities who were injured on board passenger vessels. *See e.g., Mahramas v. American Export Isbrandtsen Lines*, 475 F.2d 165, 170 (2nd Cir.1973) (holding that a hairdresser employed on board passenger vessel was a seaman); *Lunsford v. Fireman's Fund Insurance Co.*, 635 F.Supp. 72 (E.D.La.1986) (finding that a part time cleaning lady aboard a docked pleasure yacht was a "seaperson" for purposes of the Jones Act); and *Dick v. United States Lines*, 38 F.Supp. 685, 686 (S.D.N.Y.1941) (holding that musician employed on board

vessel was a seaman). Wiora worked for Harrah's as a waitress on one of its riverboat casinos. A review of the case law as well as Wiora's duties suggest that she satisfies the first prong of the test.

■ To meet the criteria of the second prong, plaintiff must show "an employment-related connection to a vessel in navigation." *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 88, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). Wiora had a clear employment-related connection to the riverboat casino. Her connection with the vessel was substantial in both duration and nature. Wiora was a full-time employee on Harrah's riverboat casino and she played an integral role in the service of customers on the boat. A number of courts have considered the question of whether a riverboat casino can be considered a "vessel in navigation." A review of those cases suggests that the M/V Northern Star was indeed a vessel in navigation.

■ "Where the vessel status of an unconventional craft is unsettled, it is necessary to focus upon the purpose for which the craft is constructed and the business in which it is engaged." *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 293 (5th Cir.1990). The Fifth Circuit has engaged in this inquiry on more than one occasion. That circuit considers three factors when determining the applicability of the Jones Act to the region's harborside, floating casinos. The factors to be considered are whether "(1) the structure was constructed to be used as a work platform; (2) the structure is moored or otherwise secured at the time of the accident; and (3) although the platform is capable of movement, and is sometimes moved across navigable waters in the course of normal operations, any transportation function is merely incidental to the platform's primary purpose." *Pavone v. Mississippi Riverboat Amusement Corporation, et al.*, 52 F.3d 560, 570 (5th Cir.1995).

There are a number of similarities between the Biloxi Belle, the vessel at issue

in *Pavone* and other cases, and the M/V Northern Star in this case. Both possess bilge pumps, raked bows and both are authorized to travel on United States waterways. The similarities end there however. While the Biloxi Belle was towed to its current home, the M/V Northern Star was constructed in New Orleans and traveled to Illinois on its own power up the Mississippi River. (Def.'s 12(M) Stmt. ¶ 22, 25.) Unlike the Biloxi Belle, the M/V Northern Star has an engine, a captain, lifesaving equipment, crew quarters and full-time marine operations department employees. (Def.'s 12(M) Stmt. ¶ 25.) As such, the court finds that the only reasonable conclusion is that the M/V Northern Star does qualify as a vessel in navigation. Having found that Wiora satisfies both prongs of the tests established for determining seaman status, the court concludes that Wiora is a seaman under the Jones Act.

■ Wiora makes the argument that the court need not even reach the question of whether she qualifies as a seaman. Wiora contends that the court may not exercise admiralty jurisdiction, general or under the Jones Act, because under *Executive Jet Aviation, Inc. et al. v. City of Cleveland, Ohio, et al.*, 409 U.S. 249, 251, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the tortious wrongs at issue in this case occurred on land, not water. In *Executive Jet*, the plaintiffs brought suit invoking federal admiralty jurisdiction for damages resulting from the crash-landing and sinking in the navigable waters of Lake Erie of their jet aircraft. The Supreme Court held that claims arising from airplane accidents are not cognizable in admiralty unless the wrong bears a significant relationship to traditional maritime activities. *Executive Jet*, 409 U.S. at 249, 93 S.Ct. 493. More notably, the court expounded upon the limits of admiralty jurisdiction. "The mere fact that the alleged wrong

'occurs' or 'is located' on or over navigable waters ... is not of itself sufficient to turn an airplane negligence case into a 'maritime tort'. It is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. 493.

Wiora first urges the court to find that both of the torts alleged in this case did not occur on the riverboat, but occurred on land, when her image was published to third parties. Furthermore, she claims that no nexus exists between the torts alleged and traditional maritime service, navigation or commerce on navigable waters. However, in other cases involving a seaperson alleging the same or similar torts, courts have exercised admiralty jurisdiction. *See Williams v. Treasure Chest Casino, L.C.C., et al.*, Nos. 95–3968, 97–0947, 1998 WL 42586,*4–8 (E.D.La. Feb. 3, 1998) (considering viability of two casino boat emergency medial technicians' claims of sexual harassment and discrimination and intentional infliction of emotional distress under the Jones Act and for unseaworthiness and maintenance and cure); *Johnston v. M/V Dieu Si Bon*, No. C96–1050R, 1996 WL 866112,*2 (W.D.Wash. Oct. 19, 1996) (examining plaintiff crew member's claims for intentional and negligent infliction of emotional distress under the Jones Act and emotional distress under the unseaworthiness doctrine); *Yballa v. Sea–Land Services, Inc.*, 919 F.Supp. 1428, 1433 (D.Haw., 1995) (ruling on crew member's claims of negligent and intentional infliction of emotional distress under Jones Act and claims of unseaworthiness).

Additionally, the case Wiora relies upon, *Lamontagne v. Craig*, 632 F.Supp. 706 (N.D.Ca.1986), as well as other Ninth Circuit cases with similar holdings, can be distinguished.[2] In *Lamontagne,* a seaman brought a defamation suit against, not his employer, but the ship's chief engineer, for

---

2. *See Clinton v. Joshua Hendy*, 285 F.2d 199 (9th Cir.1960) (finding that plaintiff who was terminated due to a libelous letter sent to someone on land did not state a claim in admiralty); *Clinton v. Int'l Org. of Masters,* *Mates, & Pilots*, 254 F.2d 370 (9th Cir.1958) (holding that defendant's alleged violation of union by-laws was not committed on navigable waters because labor contract was entered into, performed and breached on land).

publishing a defamatory letter in Hong Kong. The court dismissed plaintiff's claim and held that the court lacked admiralty jurisdiction. The court noted that while the letter was written on the boat, the tort was committed "only upon publication of the ... letteran event which occurred only upon its reception and consideration ... in Hong Kong, on land." *Lamontagne,* 632 F.Supp. at 708.

In contrast, much of Wiora's injury appears to have occurred on the riverboat. Publication first took place when individuals watched Wiora on surveillance cameras as she disrobed and applied medication to her chest and when others viewed the video and/or photos while on board. Wiora has presented no facts to the court to support her claim that publication of the video and/or photos occurred on land. Without evidentiary support for such a claim, the court must find that admiralty jurisdiction exists. *See Guidry v. Durkin,* 834 F.2d 1465, 1470 (9th Cir.1987) (finding that all prima facie requirements of tortious libel were met at sea on board ship and that plaintiff's defamation claim sounded in admiralty).

Under the facts available to the court at this time, plaintiff's case satisfies both the locality and nexus test established under *Executive Jet.* Because she is a seaperson seeking to sue her employer for an injury that, at the very least, began while she was working on a vessel in navigable waters, she cannot escape admiralty jurisdiction.[3] Plaintiff's concern that in exercising admiralty jurisdiction, the court lets Harrah's off the hook is unfounded. In fact, it is the rule of law set forth in *Executive Jet* which prevents vessel owners from getting a

"'free pass' to commit torts on land so long as the wrongful conduct commences on the water." (Pl.'s Mem. at 5.) A seaperson, injured by her employer in the course of duty may recover regardless of the location. *See O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U.S. 36, 41–42, 63 S.Ct. 488, 87 L.Ed. 596 (1943) (finding that "maritime law has recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to his vessel, whether occurring on sea or on land").

**B. Preclusion of Counts I and II**

Harrah's argues that since Wiora is a seaperson, the Jones Act stands as the only avenue she can pursue to obtain relief for the injuries claimed in Counts I and II. However, under the Jones Act, recovery for pure emotional injury is not available. Therefore, under defendant's interpretation of the law, the Jones Act effectively precludes Wiora from seeking a remedy for defendant's alleged privacy invasion and intentional infliction of emotional distress. Lacking any legal means to recover, Harrah's asks the court to dismiss Count I and II entirely and grant its motion for partial summary judgment.

**1. Intentional Infliction of Emotional Distress**

▮ While circuit court decisions on this issue vary, it is well-settled in the Seventh Circuit that a FELA or Jones Act claim for infliction of emotional distress requires a showing of offensive physical contact or a threat of physical harm. *See Ray v. Consolidated Rail Corp.,* 938 F.2d 704, 705 (7th Cir.1991).[4] A number of courts have

---

**3.** Although plaintiff insists that the "factual evidence supports that the wrong occurred beyond the scope of admiralty jurisdiction and that no maritime situs or nexus exist," she offers no facts to back up this claim. Wiora does herself a great disservice by not submitting a Local Rule 12(M) Response or 12(N) Statement. The court has no factual basis upon which to hold that the plaintiff's alleged torts occurred anywhere but on defendant's boat.

**4.** We may look to the Federal Employers' Liability Act for guidance in determining the applicability of the Jones Act to emotional injury torts. The Jones Act incorporates the Federal Employer's Liability Act (FELA) by reference, 46 U.S.C.App. § 688(a), and extends to seamen the same remedies and liability standards afforded to railroad workers under the FELA. *See Ferguson v. Moore-McCormack Lines,* 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957). As such, FELA is a

dismissed plaintiff's claims of negligent and intentional infliction of emotional distress where plaintiff plead no facts to suggest that she suffered physical injury or at the very least, was a bystander in the "zone of physical danger." *See Benvenuto v. Action Marine, Inc.,* No. 91 C 7365, 1992 WL 194649,*3–4 (N.D.Ill. Aug. 6, 1992). *See also, Lancaster v. Norfolk and Western Railway Co.,* 773 F.2d 807, 812 (7th Cir.1985) (finding no cognizable FELA claim where alleged supervisory misconduct led to his "descent into madness"); *Thomas v. Burlington Northern Railroad Co.,* No. 90 C 2453, 1991 WL 249720 (N.D. Ill. Nov. 15, 1991) (dismissing plaintiff's FELA claim for intentional infliction of emotional distress based on allegations of harassment).

Here, Wiora makes no claim of physical harm or injury. In her complaint, she merely asserts that she "suffered severe emotional and psychological damage." (Compl.¶ 22.) As such, being bound by the law set forth in *Ray,* this court must hold that her claim for intentional infliction of emotional distress is not cognizable under the Jones Act. The Supreme Court has held that the Jones Act provides the exclusive recovery for personal injury claims by seamen against their employer. *See Miles v. Apex Marine,* 498 U.S. 19, 29, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Since Wiora is a seamen seeking recovery from her employer, the court must therefore grant defendant's motion for summary judgment as it relates to Count II.

### 2. Invasion of Privacy

■ The question of whether invasion of privacy is cognizable under the Jones Act is one of first impression in this circuit.[5] To fully understand whether the Jones Act was meant to preclude Wiora's invasion of privacy claim, the court must look at the statute's legislative history and how it has evolved. At its inception, the Jones Act was created to provide seamen with the option to sue his or her employer at law, rather than under general admiralty and maritime law. *See* 14A Wright & Miller: Federal Prac. & Proc. § 3677, *Jurisdiction Under the Jones Act* (1996).[6] When Congress enacted the Jones Act it sought to remedy what it recognized as a defect in the law. "Seaman are the wards of the admiralty whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling and hence remedial legislation for benefit and protection of seaman must be liberally construed, to attain the end." *Socony–Vacuum Oil Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

Originally, Congress constructed the Jones Act to award seaman damages for a bodily injury caused by the negligence of any of the officers, agents, or employees of

good point of reference for courts considering Jones Act issues.

**5.** While the court finds little guidance on the question of whether Wiora could bring her claim for invasion of privacy under the Jones Act, a number of courts have considered a plaintiff's state law invasion of privacy claim, in view of the plaintiff's status as seaman or railroad employee covered by FELA. In *Martin v. Norfolk Southern Railway Company,* 926 F.Supp. 1044, 1051–52 (N.D.Al.1996), the court granted the defendant Railway's motion for summary judgment as to Martin's state law invasion of privacy and other claims. Martin was a railroad employee suing the Railway for sexual harassment by his co-workers under Title VII, the FELA and Alabama state law claims of outrage, invasion of privacy and assault and battery. The court noted, "the weight of authority supports the railroad's position that FELA provides the exclusive remedy for claims falling within its scope and preempts state law." *Martin,* 926 F.Supp. at 1052. *See also, Abate v. Southern Pacific Transportation Co., et al.,* No. 90–1955, 1991 WL 242205, *3 (E.D.La. Nov. 8, 1991) (finding that FELA preempted plaintiffs' state law claims, including tortious invasion of privacy).

**6.** The ability to bring a suit at law brings with it the option of having a jury trial, which does not exist for seapersons bringing suit on the admiralty side of the court's jurisdiction. 7 Wright & Miller: Federal Prac. & Proc. § 2315, Admiralty and Maritime Cases (1996).

such carrier. *See McAllister v. Magnolia Petroleum Company*, 357 U.S. 221, 232, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). While the scope of the Jones Act was decidedly narrow at the time it was enacted, over time it has expanded to provide relief for a variety of personal injuries suffered by seapersons. *See Lunsford*, 635 F.Supp. at 74. ("the Congress which passed the Jones Act would doubtless be amazed to learn that Mary Lunfsford, a shore-based part time cleaning lady, has now become a 'seaperson' with all the rights and privileges attendant to that status"). The court derives guidance from the seminal case of *Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), in which the Supreme Court indicated that under the FELA an individual may, under certain circumstances, recover for wholly emotional injury:

> Assuming, as we have, that FELA [and Jones Act] jurisprudence gleans guidance from common law developments, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive 'yes' or 'no' answer. As in other areas of law, broad pronouncements in this area may have to bow to precise application of developing legal principles to the particular facts at hand.

*Id.* at 568, 107 S.Ct. 1410. Subsequent to *Buell*, several courts have allowed recovery for wholly emotional injury, e.g., *Taylor v. Burlington Northern R.R. Co.*, 787 F.2d 1309, 1313 (9th Cir.1986), *Carroll v. Consolidated Rail Corp.*, 1991 WL 32859 (E.D.Pa.1991).

The Seventh Circuit however, is not one of those courts. In her complaint, Wiora does not evince any traditional, physical harm resulting from defendant's alleged privacy invasion. The rule set forth in *Ray*, requiring some physical injury or threat of physical injury for a tort to be cognizable under FELA, suggests that Wiora's claim for invasion of privacy would not be cognizable under the Jones Act in this circuit. *See Ray*, 938 F.2d at 705. Upon a closer examination of the reasoning set forth in *Lancaster*, 773 F.2d at 807, which first articulated the rule at issue, this court finds that without some showing of an injury of the type complained of in traditional torts such as assault and battery, Wiora may not maintain an invasion of privacy claim under the Jones Act either.

In *Lancaster*, a railroad worker claimed that his working conditions brought about the complete deterioration of his mental condition. *Id.* at 811. The court noted that because the Railway Labor Act provides a "swift and adequate remedy" for "tortious harms brought about by acts that lack any physical contact or threat of physical contact," there is no need to make recovery under FELA for these torts available. *Id.* at 813. The court opined that complaints of too much work, rather than too dangerous work, were not appropriately addressed by the FELA. "That is not our idea of an FELA claim; it has nothing to do with the security of the person from physical invasions or menaces." *Id.* The court indicated that while a false arrest claim might be allowed under FELA, "limiting a person's freedom of movement by arrest or imprisonment is a form of physical interference and firing a person is not." *Id.*

Using the Seventh Circuit's language as a guide, the court does not believe that the invasion of someone's privacy can be considered an physical invasion or menace compensable by FELA or the Jones Act. Nor can the court conclude that the a privacy invasion amounts to a form of physical interference. Admittedly, if the facts are as Wiora claims, such an invasion of privacy would certainly threaten the stability of one's psyche and emotional security. However, this court is bound by the laws of the Seventh Circuit and the court finds no authority permitting it to

find that Wiora's invasion of privacy claim speaks to anything but a purely psychological or emotional injury. Therefore, the court must grant defendant's motion for partial summary judgment on Count I as well.

■ Defendant Harrah's relies upon *Lindgren v. United States*, 281 U.S. 38, 46, 50 S.Ct. 207, 74 L.Ed. 686 (1930), in arguing that Wiora's claim for invasion of privacy is subject solely to the remedial provisions of the Jones Act. *Lindgren* states that "the Jones Act is the sole remedial scheme by which a seaman can seek redress against his employer for personal injuries." (Def.'s Mem. at 5.) However, other avenues of relief may exist for plaintiff. First, as a seaperson, Wiora may opt to sue at admiralty law rather than under the Jones Act.[7] An action for unseaworthiness or maintenance and cure might be available under general maritime law. *See Wingerter v. Chester Quarry Co.*, 98–3069, No. 185 F.3d 657, 664–66 (7th Cir.1999).[8] The language of the Act is instructive: "any seaman who shall suffer personal injury in the course of his employment, *may, at his election*, maintain an action for damages at law." 46 U.S.C.App. § 688 (emphasis added). Wiora maintains the option to bring her claims under general admiralty law.

Furthermore, Wiora may initiate state law actions of intentional infliction of emotional distress and invasion of privacy against individual defendants. There is nothing in the statute which bars Wiora from suing the individual persons who distributed the photos and/or surveillance video of her (assuming she can meet any

statute of limitation requirements). Any reading of the Jones Act that would require this court to preclude Wiora from bringing her tort claim entirely would thwart the statute's original purpose. For it is clear from a number of Supreme Court holdings that the Jones Act is to be interpreted broadly, so as to enable seapersons to recover for personal injury caused while on his employer's watch. The Jones Act "created new rights in seamen for damages arising from maritime torts and it entitled to a liberal construction to accomplish its beneficent purposes." *Cosmopolitan Shipping Co. v. McAllister*, 338 U.S. 839, 70 S.Ct. 32, 94 L.Ed. 513 (1949). See also, *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942) (holding that the statute must be liberally construed to carry out its full purpose, which was to enlarge admiralty's protection to its wards).

Having found that the court may exercise admiralty jurisdiction over Wiora's claims in Counts I and II, the court need not engage in a protracted discussion of arguments concerning alternative bases for subject matter jurisdiction. Defendant is correct in asserting that the parties are not diverse, therefore no diversity jurisdiction exists. While Harrah's is a Nevada corporation, its principal place of business is in Illinois. (Def.'s 12(M) Stmt. ¶ 9–11.) Since Wiora is also an Illinois citizen, the parties are not completely diverse and the court may not exercise diversity jurisdiction over this case. *See* 28 U.S.C. § 1332(c)(1). As noted earlier, the Jones Act preempts plaintiff's putative state law claims of intentional infliction of emotional

---

**7.** Under Federal Rule of Civil Procedure 9(h), "A pleading or count setting forth a claim for relief within the admiralty or maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim." Fed. R.Civ.P. 9(h). Wiora did not include an identifying statement in her complaint identifying it as an admiralty claim, however, "the amendment to a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15" and as such, leave to

do so would be "freely given when justice so requires." Fed.R.Civ.P. 9(h); Fed.R.Civ.P. 15(a).

**8.** See also, *Executive Jet*, 409 U.S. at 260, 93 S.Ct. 493. "The doctrine of unseaworthiness has been extended to permit a seaman or a longshoreman to recover from a ship owner for injuries sustained wholly on land, so long as those injuries were caused by defects in the ship or its gear." 409 U.S. at 260, 93 S.Ct. 493.

distress and privacy invasion. *See Lancaster*, 773 F.2d at 812. As such, no supplemental jurisdiction of state law claims by virtue of Title VII exists either.

### Conclusion

Thus, for the reasons set forth above, the court finds that the Jones Act provides Wiora, a seaman, with the exclusive remedy for her claims in Counts I and II. Since the Seventh Circuit has held that non-physical injury torts are not cognizable under the Jones Act, the court must dismiss Counts I and II against Harrah's. The court therefore grants defendant's motion for partial summary judgment on Counts I and II. The court instructs parties to discuss settlement prior to the next scheduled court date.